# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

VALERIE SHELDON,

        Plaintiff,

v.

MESILLA VALLEY HOSPITAL,
INC.,

        Defendant.

Case No.

Judge:

**COMPLAINT FOR:**

    **1. VIOLATION OF THE ADA;**
    **2. VIOLATION OF TITLE VII;**
    **3. VIOLATION OF THE HUMAN RIGHTS ACT;**
    **4. UNLAWFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY;**
    **5. BREACH IMPLIED-IN-FACT CONTRACT;**
    **6. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

**JURY TRIAL DEMANDED.**

COMES NOW, Plaintiff Valerie Sheldon, and alleges upon information and belief, as follows:

## NATURE OF THE ACTION

1.    Plaintiff Sheldon (hereinafter "Ms. Sheldon" or "Ms. Sheldon") brings this disability discrimination action against defendant Mesilla Valley Hospital, Inc. for damages under Title VII ("Title VII") of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e-2, and 2000e-5, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, 12117, 12132, 12133, New Mexico Human Rights Act ("NMHRA"), N.M.Stat.Ann. §§ 28-1-1 *et seq.*, and New Mexico common law.

## PARTIES

2.     Ms. Sheldon is, and at all times relevant hereto has been, a citizen of the United States and a lawful resident of Luna, New Mexico.  Ms. Sheldon worked for Defendant MVH Mesilla Valley Hospital, Inc. from approximately August of 2003 until she was illegally and wrongfully terminated on or about June 30, 2006 because of her cancer treatment.

3.     Defendant Mesilla Valley Hospital, Inc. ("Defendant MVH") has been at all times relevant herein a corporation, registered to do business in the State of New Mexico, and Dona Ana County.  It operates a hospital in Las Cruces, New Mexico located on 3571 Del Rey Blvd.  Defendant MVH employs between 101 and 200 employees in Las Cruces. On information and belief, Ms. Sheldon alleges that Defendant MVH is owned by Psychiatric Solutions, Inc., a corporation headquartered in Franklin, Tennessee, and registered to do business in the State of New Mexico.  It does do business in Dona Ana County through Defendant MVH.  It is a public company that is traded on the NASDAQ under the symbol "PSI."

## JURISDICTION

4.     Venue in this Court is proper because the disability discrimination and other actions giving rise to this Complaint took place in Las Cruces, New Mexico.  Moreover, Ms. Sheldon lives in this judicial district and Defendant MVH resides here as well.

5.     Jurisdiction in this Court is proper because defendant's conduct as herein alleged constitutes a violation of the federal statute found at 42 U.S.C. §12101, *et seq.,* the Americans with Disabilities Act ("ADA"), and/or 42 USC section 2000e-5, 5(g) ("Title VII").

6.     This Court has supplemental jurisdiction over Ms. Sheldon's other claims pursuant to 28 U.S.C. section 1367(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Ms. Sheldon timely filed a charge of discrimination against Defendant MVH with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). The EEOC found Ms. Sheldon was denied a reasonable accommodation in violation of Title VII, and/or ADEA, and issued a right to sue notice on those charges on October 28, 2008. Ms. Sheldon filed this Complaint within 90 days of the October 28, 2008 Right to Sue Letter.

8.      The EEOC has concurrent jurisdiction with the New Mexico Human Rights Commission to investigate charges of discrimination. As such, Ms. Sheldon has exhausted her state remedies as well.

## FACTUAL BACKGROUND TO THIS LITIGATION

9.      Mesilla Valley Hospital is a 125-bed, free-standing facility that offers recovery and psychological services for its patients. Defendant MVH owns Mesilla Valley Hospital.

10.      On or about August 2003, Defendant MVH hired Ms. Sheldon as a Counselor/Home Based Case Worker ("Home Based Case Worker") to provide psycho-educational and social counseling case management functions to clients, including assisting them meet their psychological needs, and enabling them to achieve their optimal level of emotion health. As part of her job, Ms. Sheldon worked out of her home and drove throughout all of Grant County and elsewhere to meet with clients served by Defendant MVH.

11.      At all times material to this action, Defendant MVH represented to Ms. Sheldon that it would provide Ms. Sheldon with a work environment free from disability discrimination, harassment and hostility. Defendant MVH violated said representations and terms of the Parties' employment contract. These provisions and representations form part of Ms. Sheldon's

implied in fact employment contract with Defendant MVH.

12.     Ms. Sheldon had, and has, the educational and background experience to work as a Home Based Case Worker.

13.     Ms. Sheldon was a good Home Based Case Worker.  She received at least two pay increases during her employment, and received other recognition for her hard work during her employment with Defendant MVH, including notes from management indicating that she was doing a good job.  Approximately three months before she was wrongfully terminated due to her cancer and treatment for her cancer, she received a note from her supervisor that she was doing a good job.

14.     In October of 2005, Ms. Sheldon was diagnosed with colon and rectal cancer.  The colon is part of the body's digestive system. The digestive system removes and processes nutrients (vitamins, minerals, carbohydrates, fats, proteins, and water) from foods and helps pass waste material out of the body. The digestive system is made up of the esophagus, stomach, and the small and large intestines. The first 6 feet of the large intestine are called the large bowel or colon. The last 6 inches are the rectum and the anal canal. The anal canal ends at the anus (the opening of the large intestine to the outside of the body). In the United States, colorectal cancer is the fourth most common cancer, after skin, prostate, and lung cancer.

15.     Soon thereafter, she underwent intensive treatment.  In accordance with the Family Medical Leave Act, she took time off from her employment to address her cancer treatment.  At this time, she notified Defendant's Human Resources Department – including but not limited to Linda Moya - that she had a serious medical condition that required time off for intensive medical treatment.

16.     Soon thereafter, Defendant MVH manager Kristin Wallin,

Defendant's Human Resources' Manager, called Ms. Sheldon and told her that she knew about her serious medical condition, the company wanted to help her, and that she was a good employee.  She also told Ms. Sheldon that the company appreciated the work Ms. Sheldon had done for them, and therefore they were reducing her caseload from eight to six cases with only 32 encounters required/week.   An encounter is a meeting with a client or someone associated with that client.

17.     This reduced caseload was taken as a reasonable accommodation under the ADA.  A full load at this time was eight cases and 40 encounters.  As such, Defendant provided a reasonable accommodation due to Plaintiff's disability for a period of time.

18.     From December of 2005 until April 23, 2006, Ms. Sheldon provided numerous doctor's notes to Defendant MVH management indicating that she had a serious medical condition which required intensive medical therapy, would be receiving intravenous therapy requiring multiple absences from work, and that she suffered from extreme fatigue and profound anemia requiring iron therapy.  One note dated March 2006, states the following: "Due to the severity of the illness she [Plaintiff] will have to return to the hospital for a week at a time for at least 3 months after the initial treatment."

19.     Throughout her cancer treatment, Ms. Sheldon worked competently for Defendant MVH and received at least two notes from her manager indicating that she was doing a good job.

20.     Ms. Sheldon's colon and rectal cancer treatment started in the fall of 2005 and ended in November 2008.  During this time, she underwent aggressive treatment, including chemotherapy, among other things.

21.     After Ms. Sheldon received a reasonable accommodation from

Ms. Wallin, management changed at Defendant MVH.  This new management had a more profit driven approach to operating the business. This new management pressured and demanded that Ms. Sheldon carry ten cases, representing a 66.67% increase in her caseload. Ms. Sheldon asked management to allow her to carry a lesser case load until her cancer treatment was completed.

22.     On March 31, 2006, Ms. Sheldon was incorrectly placed on Employee Performance Improvement Plan for a sixty day period to increase her workload.  At this time, she was working a full load as indicated by her supervisor Ms. Wallin.  In order to bypass this directive, and make Plaintiff look like she was not performing competently, management arbitrarily changed the counting of hours by lowering the count for an initial interview from five encounters to just one thereby lowering Ms. Sheldon's hours worked.

23.     Ms. Sheldon confronted Ms. Provencio and Trish Hall about this arbitrary change that was never formalized in writing to Plaintiff or to the best of Plaintiff's knowledge ever adopted by Defendant.  Indeed, on the Employee Performance Improvement Plan. Ms. Sheldon wrote that she understood an audit of her encounters would be reviewed and "initials"(opening new clients) would counted as five (5) encounters due to the time it takes to interview and complete a client's paperwork.

24.     In this meeting, Ms. Sheldon noted that Ms. Provencio had not counted her hours correctly and that Ms. Sheldon had met the required 32 encounters.  After this discussion, Ms. Provencio reversed course and announced at a staff meeting that an initial interview would once again count as five encounters.

25.     At the time that new management demanded that Ms. Sheldon

increase her caseload from six to ten cases, only two out the fourteen Home
Based Case Workers were carrying ten cases.  This unreasonable demand was
designed as a pretext for terminating Plaintiff.  Defendant MVH was
requiring Plaintiff, a woman undergoing cancer treatment, to carry more
hours that other health Home Base Case Workers.

26.     On or about June 27, 2006, Ms. Provencio – who had seen the
numerous doctor's notes indicating that Plaintiff was undergoing intensive
medical treatment - held a meeting with Plaintiff and asked why she could
not carry more cases.  Plaintiff once again explained that she was undergoing
intensive medical treatment for a serious medical condition that physically
limited her ability to carry a full caseload.  Knowing that Ms. Sheldon was
concerned about her privacy and her cancer treatments, Ms. Provencio agreed
and directed Plaintiff to draft a communication to her indicating that she was
limited in her activities not due to her intensive medical treatment but rather
because of the distance her territory covered.  Plaintiff wrote and sent the
communication as directed by her manager, Ms. Provencio.

27.     Ms. Provencio then used this memorandum and other false and/or
misleading evidence to draft a memorandum to terminate Ms. Sheldon.  In
this June 26, 2006 Memorandum, Ms. Provencio made false and/or
misleading statements and wrongfully accused Plaintiff of insubordination
for refusing to carry ten cases.  Ms. Sheldon never refused to carry more
cases; she simply pleaded with Ms. Provencio to allow her to finish her
cancer treatment and indicated that she could not safely carry a full load
given her medical treatments. This memorandum was drafted with a
malicious and evil intent and designed to serve as a reason for terminating
Plaintiff, which management did days later after the Memorandum.

28.     Ms. Sheldon's cancer treatment limited her life activities in the

following ways: she was fatigued; she was under stress about whether she would survive; she suffered body aches and therefore had limited mobility and difficulty sitting; she suffered nausea and vomiting, anemia, and brutal diarrhea and constipation.

29.    During her employment with Defendant MVH, Ms. Sheldon repeatedly requested that Defendant MVH continue their reasonable accommodation for allowing her to carry a lesser case load.  Indeed, when management asked her when she could carry additional cases, Plaintiff followed management's directive and brought in additional doctor's notes.

30.    The new management has taken the position that despite undergoing cancer treatment, Ms. Sheldon must carry a "full" caseload despite the fact that very few of the other employees are carrying said caseload.

31.    When Ms. Sheldon told her manager that she was unable to safely increase her caseload due to her disability, she was terminated.  Soon thereafter, Ms. Sheldon filed a complaint with the EEOC.

32.    At the time of her termination, Ms. Sheldon was one of the most senior and experience Home Base Case Workers employed by Defendant MVH in the outpatient division.

33.    Months before her termination, Plaintiff's physical conditions worsened due the treatment.  At one point, she was unable to drive a car and therefore had her mother drive her around for work. Moreover, she could not control her bowels and vomited a great deal.

34.    Ms. Sheldon was disabled under the ADA as she had a physical or mental impairment that substantially limits one or more of her major life activities, had a record of such impairment, and was regarded as having said impairment as Ms. Sheldon told management about a serious medical illness

and treatment for said illness requiring her to spend a week at a time at the hospital for at least three months after the initial treatment.

35.     A reasonable accommodation existed in this case.  Indeed, upon hearing that Plaintiff had a serious medical life threatening condition, Defendant MVH provided Ms. Sheldon with one: carry six cases with 32 encounters.  Defendant MVH could have continued to allow Ms. Sheldon to carry a lesser caseload for a limited period of time until Ms. Sheldon's cancer treatment was completed. Taking such action would not have been an undue hardship on Defendant MVH.  Indeed, other Home Based Case Workers were not carrying ten cases with 40 encounters.

36.     At all times herein alleged, Ms. Sheldon was a qualified individual with a disability as she had cancer and was treated for cancer.

37.     Greater than fifteen employees have worked at Defendant MVH for over twenty calendar weeks in the calendar year.   The EEOC papers indicate that Defendant MVH employs between 101 and 200 employees.  At the time that Ms. Sheldon was terminated, her job was not eliminated.

38.     As a result of Defendant MVH's actions, Ms. Sheldon has suffered harm in an amount to be established according to proof at trial.

39.     Defendant's management wrote false and/or misleading memorandum in Ms. Sheldon's employment file in their effort to conceal their illegal activity.

40.     Defendant MVH's above-described actions violate the ADA, were malicious, intentional, and in conscious disregard of Ms. Sheldon's rights under the ADA, and therefore, warrant an award of punitive damages.

41.     The EEOC found reasonable cause to warrant violations of Title VII and/or the Americans with Disabilities Act.  Ms. Sheldon filed this Complaint within 90 days of the October 28, 2008 Right to Sue Letter.

42.    Defendant MVH is liable for all the acts of its respective employees and/or agents through vicarious liability, agency law, and/or respondeat superior.  At all relevant times herein alleged, Defendant MVH directed and controlled and benefited from its respective employees and/or agents involved in conduct herein alleged.

## FIRST COUNT

### (Discrimination: Americans with Disabilities Act of 1990
### 42 U.S.C. §12203, *et seq.*)

43.    Ms. Sheldon hereby incorporates by reference each and every one of the above paragraphs as though fully set forth herein.

44.    The ADA protects qualified individuals with disabilities from employment discrimination and requires employers to make reasonable accommodations for applicants and employees with disabilities.

45.    Under the ADA, a person has a disability if they have a physical or mental impairment that substantially limits a major life activity. To be protected under the ADA, an individual must have, have a record of, or be regarded as having a substantial, as opposed to a minor, impairment.  A substantial impairment is one that significantly limits or restricts a major life activity such as hearing, seeing, speaking, breathing, and performing manual tasks, walking, caring for oneself, learning or working.

46.    Physical or mental impairments include, but are not limited to: visual, speech, and hearing impairments, and include having cancer and/or undergoing cancer treatment as did Ms. Sheldon as herein alleged.

47.    At all times relevant hereto, Ms. Sheldon was a qualified individual within the meaning of the ADA.  Ms. Sheldon was a person who with or without a reasonable accommodation could perform the essential functions of a Home Based Counselor.  Indeed, during her employment, Ms.

Sheldon received at least two pay increases and recognition as a good employee.

48.    Ms. Sheldon had a disability within the meaning of the ADA and was qualified to perform the essential functions of the Home Based Counselor.  Ms. Sheldon satisfied Defendant MVH's requirements for educational background, employment experience, and skills for said position. Ms. Sheldon could have performed the job and would have but for Defendant MVH's illegal discrimination. In fact, prior to being illegally terminated, she was performing the job competently.

49.    At all times relevant hereto, Ms. Sheldon was a person with a disability within the meaning of the ADA, and was regarded and should have been treated by Defendant MVH as a person with a disability.

50.    During the relevant period herein alleged, Ms. Sheldon suffered from a physical or mental impairment that substantially limited one or more of her major life activities: Ms. Sheldon suffered from cancer and underwent cancer treatment.  Ms. Sheldon has a documented record of her cancer and its treatment.

51.    Ms. Sheldon was perceived by Defendant MVH employees as having said impairment.  Indeed, Ms. Sheldon told Defendant MVH management of her treatment for a serious medical disease that was life threatening.

52.    At all times relevant hereto, Defendant MVH was an employer within the meaning of the ADA.

53.    The above-described actions of Defendant MVH constitute discrimination based upon disability and/or perceived disability, in violation of the ADA.

54.    Ms. Sheldon was terminated from employment at Defendant

MVH solely based on her disability.

55.     As a proximate result of Defendant MVH's actions and/or inactions, Ms. Sheldon has suffered and continues to suffer substantial loss of earnings and other employment benefits, including the loss of her health insurance.

56.     Defendant MVH's actions were willful, malicious, and oppressive, and were committed with the wrongful intent to injure Ms. Sheldon and in conscious disregard of Ms. Sheldon's rights.

## SECOND COUNT

## (Violation Of Plaintiff's Rights Under Title VII of the Civil Rights Acts 42 U.S.C. §2000e *et seq.*)

57.     Ms. Sheldon hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

58.     At all times material to this action, Defendant MVH was an employer and a "person" pursuant to 42 USC § 1983.

59.     Ms. Sheldon was treated differently than similarly situated individuals. Such action by Defendant MVH was irrational and wholly arbitrary. Defendant MVH's mistreatment of Ms. Sheldon took place as a result of an official policy, custom and/or practice.

60.     Likewise, the arbitrary action taken by Defendant MVH towards Ms. Sheldon was motivated by a spiteful effort to remove Ms. Sheldon from her employment for reasons wholly unrelated to any legitimate objective. Indeed, Defendant's management wrote false and/or misleading memorandum in Ms. Sheldon's employment file in their effort to conceal their illegal activity.

61.     Title VII prohibits employers from discriminating against

applicants and employees on the basis of race or color, religion, sex, pregnancy, childbirth and national origin.  It also prohibits employers from terminating an employee who asserts his or her rights under the law.

62.    Title VII's prohibition against discrimination applies to all terms, conditions and privileges of employment, including: hiring, firing, compensation, benefits, job assignments, shift assignments, promotions and discipline.

63.    Title VII also prohibits employer practices that seem neutral but have a disproportionate impact on a protected group of people.  Defendant MVH's practice of terminating Ms. Sheldon because of her on-going cancer treatment has a disproportionate impact on people, like Plaintiff, that have said disability.

64.    At all times relevant hereto, Ms. Sheldon was an employee of Defendant MVH.  Ms. Sheldon was a member of a protected class due to her disability protected under the ADA.

65.    Defendant MVH took adverse employment action against Ms. Sheldon when it fired because she would not increase her caseload by 66.67% and therefore jeopardize her recovery from cancer.  Accordingly, Defendant MVH discriminated against Ms. Sheldon due to her disability. Greed motivated Defendant's employees and management.

66.    The above-described actions of Defendant MVH constitute discrimination based upon disability or perceived disability, in violation of Title VII.

67.    Ms. Sheldon was terminated from employment at Defendant MVH solely based on her disability.

68.     As a proximate result of Defendant MVH's actions and/or inactions, Ms. Sheldon has suffered and continues to suffer substantial loss of

earnings and other employment benefits.

69.    Defendant MVH's actions were willful, malicious, and oppressive, and were committed with the wrongful intent to injure Ms. Sheldon and in conscious disregard of Ms. Sheldon's rights.

## **THIRD COUNT**

## **(Violation of NMHRA – Wrongful Termination And Failure To Accommodate)**

70.    Ms. Sheldon hereby incorporates by reference each and every above mentioned paragraph of this Complaint as though fully set forth herein.

71.    Under the Human Rights Act, an employer is prohibited from discharging "any person otherwise qualified because of . . . medical condition."  Section 28-1-7(A).

72.    The applicable regulations of the New Mexico Human Rights Division define a medical condition as "any medical condition as defined by an appropriate medical authority through documentation, or by direct witness of a clearly visible disablement."  Rules & Regulations, N.M. Dep't of Labor, Human Rights Division, I(A)(26) (Nov. 11, 1988) (superceded 1998).

73.    Under the Human Rights Act, it is an unlawful discriminatory practice for an employer "to refuse or fail to accommodate to an individual's physical or mental handicap or medical condition, unless such accommodation is unreasonable or an undue hardship."  Section 28-1-7(J).

74.    At all times relevant hereto, Ms. Sheldon was a qualified individual within the meaning of the NMHRA.  Ms. Sheldon was one who with or without a reasonable accommodation could have performed the essential functions of her job. Indeed, she did for some time and received at least two pay increases during her employment.

75.   At all time relevant hereto, Ms. Sheldon was a person with a disability and/or serious medical condition within the meaning of the NMHRA, and was regarded as and should have been treated by Defendant MVH as a person with a disability or a serious medical condition as she was diagnosed with cancer, a terminal disease, and was undergoing aggressive treatment, including surgery and chemotherapy.

76.   At all times relevant hereto, Defendant MVH was an employer within the meaning of the NMHRA as it employs more than four persons.

77.   The above-described actions of Defendant MVH constitute discrimination based upon Plaintiff's serious medical condition and/or disability and/or perceived disability.  Defendant MVH refused and/or failure to accommodate Plaintiff's serious medical condition is a violation of the NMHRA.

78.    As a proximate result of Defendant MVH's actions and/or inactions, Ms. Sheldon has suffered and continues to suffer substantial loss of earnings and other employment benefits.  The amount of said damages shall be proved according to proof at trial.

79.   Defendant MVH's actions were willful, malicious, and oppressive, and were committed with the wrongful intent to injure Ms. Sheldon and in conscious disregard of Ms. Sheldon's rights. Indeed, Defendant's management wrote false and/or misleading memorandum in Ms. Sheldon's employment file in their effort to conceal their illegal activity.

## FOURTH COUNT

## (Unlawful And Retaliatory Discharge In Violation Of Public Policy)

80.   Ms. Sheldon re-alleges and incorporates each and every allegation set forth in the paragraphs above.

81.   Defendant MVH's act and omissions herein described violated

the NM Human Rights Act.

82.    The public policy of the State of New Mexico includes the prohibition against disability discrimination in employment and terminating an employee for reporting her disability.

83.    In subjecting Ms. Sheldon to disability discrimination and terminating her for her disability, Defendant MVH violated the public policy of the State of New Mexico.

84.    As a proximate result of Defendant MVH's wrongful conduct, Ms. Sheldon has suffered lost back and future wages and benefits, humiliation, and/or other damages.

85.    Defendant MVH's actions and/or omissions were done maliciously, willfully or wantonly, or in a manner that demonstrates a reckless disregard for Ms. Sheldon's rights. As a result of Defendant MVH's conduct, Ms. Sheldon is entitled to recover punitive damages.

86.    The public policy of New Mexico, specifically the New Mexico Human Rights Act, prohibits employer discrimination on the basis of a person's disability, and retaliation against an employee for opposing unlawful conduct on the basis of said disability.

87.    Ms. Sheldon complained to management about management's attempt to revoke their reasonable accommodation and pressure her to carry a full case load when in fact other healthy Home Based Case Workers were not carrying a full case load.

88.    Defendant MVH retaliated against Ms. Sheldon because of her complaints and/or disability by terminating her and taking other action, including but not limited to writing false and/or misleading memorandum to Ms. Sheldon's employment file.

89.    Ms. Sheldon has suffered damages as a result of the termination

including but not limited to lost earnings, lost benefits, damages, and/or humiliation.

90.    Defendant MVH, through its management level employees, acted intentionally, maliciously, willfully, wantonly and in reckless disregard of Ms. Sheldon's rights.  They knew that Ms. Sheldon was being treated for a terminal disease with aggressive treatment yet they increased her caseload 66.67% in their efforts to force her out of her position and maximize their own profits.

91.    Ms. Sheldon is entitled to all damages recoverable for retaliatory discharge, including compensatory and punitive damages from Defendant MVH.

## FIFTH COUNT
### (Breach Of Implied-In-Fact Contract)

92.    Ms. Sheldon re-alleges and incorporates each and every allegation set forth in the paragraphs above.

93.    At all times material to this action, Defendant MVH represented to Ms. Sheldon, both verbally and in writing, in its Employee Handbook, that it would provide Ms. Sheldon with a work environment free from disability discrimination, harassment and hostility.  It did not and violated said representations and terms of the Parties' employment contract. These provisions and representations form part of Ms. Sheldon's implied in fact employment contract with Defendant MVH.

94.    Ms. Sheldon relied upon these representations to her detriment.

95.    Defendant MVH and Ms. Sheldon entered into an implied-in-fact employment contract.

96.    Defendant MVH breached the employment contract with Ms. Sheldon by subjecting her to discrimination, hostility, and by not following

its own written and expressed employment policies and procedures. Defendant MVH further breached their contract by engaging in conduct prohibited by the contract – e.g., disability discrimination.

97.   Defendant MVH further breached the contract with Ms. Sheldon by terminating her employment without just cause, where she was successfully performing her duties.

98.   Defendant MVH's conduct has been willful and wanton or done in reckless disregard of Ms. Sheldon's rights.

99.   As a result of Defendant MVH's breach of the employment agreement, Ms. Sheldon suffered and continues to suffer damages including a loss of wages and earning capacity, loss of employment advancement and opportunities, retirement benefits, vacation and sick leave, fringe benefits, insurance, bonuses, and/or other employee benefits she would have received but for Defendant MVH's breach of the parties' agreement, compensatory damages, pre-judgment and post-judgment interest, and other damages allowed by law.

## SIXTH COUNT

### (Breach Of Implied Covenant of Good Faith And Fair Dealing)

100.   Each and every allegation set forth in the preceding paragraphs is incorporated as if set forth fully herein.

101.   Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.  The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement.  Denying a party its rights to those benefits breaches the duty of good faith implicit in the contract.

102.   The employment contracts between the Parties had implied in law

a covenant of good faith and fair dealing by which Defendant MVH promised to give its full cooperation to Ms. Sheldon in the performance of her duties, and to refrain from any act that would impede or prevent Ms. Sheldon in the performance of her duties. This included a requirement that Defendant MVH refrain from unlawfully discriminating against her for her disability. This duty also included a requirement that Defendant MVH make a good faith effort to provide Ms. Sheldon reasonable accommodations for her disability.

103.   In the employment relationship between Defendant MVH and Ms. Sheldon, an implied covenant of good faith and fair dealing arose, which required Defendant MVH not to take action that prevented Ms. Sheldon from receiving the benefits of the contract.

104.   Defendant MVH breached the implied covenant of good faith and fair dealing with regard to Ms. Sheldon by acting in bad faith by intentionally and unlawfully discriminating against her in violation of the New Mexico Human Rights Act, as amended, Title VII of the Civil Rights Act, as amended, and the Americans with Disabilities Act, as amended, and by acting in bad faith as management knew that Ms. Sheldon had cancer and was undergoing cancer treatment but increased her caseload 66.67% in their effort to increase profits and get rid of her.

105.   Also, Defendant MVH acted in bad faith by terminating Ms. Sheldon for reasons unrelated to any legitimate business objective and by using false pretenses and statements to support Ms. Sheldon's wrongful termination.

106.   As a result of Defendant MVH's bad faith action towards Ms. Sheldon, Ms. Sheldon suffered and continues to suffer damages including a loss of wages and earning capacity, loss of employment advancement and opportunities, retirement benefits, vacation and sick leave, fringe benefits,

insurance, bonuses, and/or other employee benefits she would have received but for Defendant MVH's breach of the parties' agreement, compensatory damages, pre-judgment and post-judgment interest, and other damages allowed by law.

## **PRAYER FOR RELIEF**

Ms. Sheldon respectfully prays for judgment against Defendant MVH as follows:

1.     For judgment be entered in favor of Ms. Sheldon and against Defendant MVH;

2.     Adjudge and decree that Defendant MVH violated Ms. Sheldon's statutory and other rights and has done so willfully;

3.     Award against Defendant MVH and in favor of Ms. Sheldon, liquidated damages and prejudgment interest in amounts to be proven at trial;

4.     Award against Defendant MVH and in favor of Ms. Sheldon, actual damages for back pay, benefits, future earnings and promotional opportunities to be proved at trial;

5.     For general, presumed and specific damages based upon damage to Ms. Sheldon in a sum according to proof at trial;

6.     For punitive damages and/or exemplary damages, in a sum according to proof at trial;

7.     For interest on judgment, including prejudgment interest and any other statutory interest, at the legal rate;

8.     For front pay in lieu of reinstatement, in a sum according to proof at trial;

9.     For reasonable attorneys' fees and costs as provided for by the laws as herein described;

10.    For injunctive relief: (1) ordering Defendant MVH to cease and

desist from discriminating against individuals with disabilities and retaliating against individuals who oppose Defendant MVH's unlawful and discriminatory practices; and (2) ordering Defendant MVH to provide mandatory and meaningful training to all managers and employees regarding the laws prohibiting discrimination against individuals with disabilities;

11.   For such other and further relief as the Court may deem proper.

### JURY TRIAL DEMANDED

Plaintiff hereby respectfully demands a trial for all issues so triable.

Dated: this 21st day of January, 2009

Electronically filed, and,
Respectfully Submitted,

/s/ Ben Furth
BEN FURTH (NM BAR #121402)
BEN@RICHARDSFIRM.COM
KIMBERLY A. RICHARDS (NM #10572)
KIMBERLY@RICHARDSFIRM.COM
**RICHARDS FURTH PC**
425 South Telshor
Building C, Suite 204
Las Cruces, New Mexico 88011
Telephone: 575-522-3996
Facsimile:  575-532-5815
www.richardsfirm.com

STEVEN ALMANZA (NM BAR NO. 15543)
ESTEVALMANZA@HOTMAIL.COM
**STEVEN ALMANZA LAW OFFICE**
P.O. BOX 1660
LAS CRUCES, NM 88004-1660
TELEPHONE:        575-524-8312
FACSIMILE:         575-526-6449